**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| GLENN BOSWORTH, | ) | NO. CV 13-2924 DMG (SS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER DISMISSING** |
| | ) | |
| DAVID ESCALANTE, et al., | ) | **COMPLAINT WITH LEAVE TO AMEND** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On April 25, 2013, Plaintiff, a federal prisoner proceeding pro se, filed a civil complaint against certain named and unnamed employees of the Federal Correctional Institution ("FCI") in Lompoc, California, alleging violations of (1) his civil rights pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971); (2) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1503, 1509, 1512 & 1513; and (3) Federal Bureau of Prisons ("BOP") regulations codified at

1  28 C.F.R. §§ 543.13 - 543.14.   For the reasons stated below, the

2  Complaint is dismissed with leave to amend.[1]

3

4      Congress mandates that district courts initially screen civil

5  complaints filed by a prisoner seeking redress from a governmental

6  entity or employee.  28 U.S.C. § 1915A(a).  This Court may dismiss such

7  a complaint, or any portions thereof, before service of process if the

8  Court concludes that the complaint (1) is frivolous or malicious,

9  (2) fails to state a claim upon which relief can be granted, or

10 (3) seeks monetary relief from a defendant who is immune from such

11 relief.  28 U.S.C. § 1915A(b)(1)-(2); see also Lopez v. Smith, 203 F.3d

12 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

13

14                              **II.**

15                   **ALLEGATIONS OF THE COMPLAINT**

16

17     Plaintiff sues three named employees of FCI-Lompoc:  (1) Officer

18 David Escalante, (2) Lieutenant Mitchell, and (3) Lieutenant Duden.

19 (Complaint at 6).   All named Defendants are sued in their individual

20 capacity only.  (Id.).  In addition, Plaintiff sues "John and Jane Does

21 1-20."  (Id. at 6-7).

22

23     Plaintiff generally alleges that Escalante, Mitchell and Duden

24 intentionally and maliciously interfered with his "inalienable right" to

25 meet with counsel before he filed a pro se petition for writ of

26 _____

27        [1] Magistrate Judges may dismiss a complaint with leave to amend

28 without approval of the District Judge.  See McKeever v. Block, 932 F.2d
   795, 798 (9th Cir. 1991).

                                 2

1 certiorari with the Supreme Court on direct appeal.  (Id. at 9).
2 Specifically, Plaintiff states that he hired private counsel to review
3 his draft petition approximately six or seven weeks before the Supreme
4 Court filing deadline of October 20, 2012.  (Id. at 25 & 43).  The
5 petition raised an "important issue" of "first impression" concerning
6 whether the public trial guarantee applies to sentencing proceedings,
7 which Plaintiff states were closed in his case.  (Id. at 21).  Plaintiff
8 anticipated that if the petition were granted and the Supreme Court
9 ordered a new sentencing hearing, he would then have the opportunity to
10 challenge the validity of the charges to which he had pled guilty based
11 on newly discovered evidence uncovered during his appeal to the Ninth
12 Circuit.  (Id. at 22).  Escalante approved the addition of counsel to
13 Plaintiff's list of authorized visitors.  (Id. at 13).  Counsel made
14 several attempts to contact Escalanate to arrange for a visit to the
15 prison, but Escalante did not return counsel's calls or respond to
16 counsel's faxed request.  (Id. at 14).

17

18     On Tuesday, September 18, 2012, Escalante called Plaintiff to his
19 office and told him that counsel could visit only on the prison's
20 regular visiting days, i.e., Saturdays, Sundays and Mondays.  (Id. at
21 15).  Plaintiff called counsel from Escalante's office in Escalante's
22 presence using speakerphone.  Counsel told Plaintiff that he had
23 coincidentally just arrived at the prison because he had been told the
24 previous day that attorneys were permitted to meet with their clients at
25 the prison any day of the week, not just regular visiting days.  (Id.).
26 Escalante told counsel that he could visit only on Saturdays, Sundays
27 and Mondays.  Escalante also demanded to know who had informed counsel
28 he could visit during the week and told counsel that he would call him

1  back shortly.  (Id.).  Escalante consulted with Duden, who told him that
2  "if there was not a memorandum from our Legal Department concerning this
3  visit, it was not going to happen."  (Id. at 23).

4

5       Counsel waited in the prison parking lot for Escalante's call.  As
6  he was waiting, "two armed Federal Officers" ordered counsel to leave
7  the premises.  Counsel complied with the order.  (Id. at 16).  Counsel
8  returned to the prison several hours later.  Escalante spoke to counsel
9  in the reception office, where he and counsel agreed that counsel could
10 meet with Plaintiff on Sunday, September 23, 2012 for an authorized
11 legal visit.  (Id.).

12

13      On September 23, 2012, counsel arrived at the prison but was told
14 that Plaintiff had not been approved for a legal visit on that day.
15 (Id. at 16 & 25).  Mitchell permitted counsel to meet with Plaintiff
16 only as a regular visitor.  Because Mitchell did not permit counsel to
17 see Plaintiff for a "legal visit," counsel could not bring his work
18 product with him or use the designated private meeting room normally
19 reserved for attorney visits.  (Id.).  Due to the "lack of work product
20 and privacy, Plaintiff and his counsel could not discuss the substantive
21 aspects" of Plaintiff's draft petition during their visit.  (Id. at 17).

22

23      During this period, Plaintiff asked Escalante if he could arrange
24 for a telephone call to counsel on a secure, unrecorded line.  (Id.).
25 Escalante told Plaintiff that he would allow only a single, fifteen-
26 minute call.  Plaintiff argues that this was insufficient time to
27 discuss his petition in detail and notes that mail communications would

28

1  not permit a thorough analysis of the petition either because of the
2  four- to seven-day turnaround in the prison mail system.  (Id.).

3

4       Plaintiff's counsel sent a letter to the prison warden the week
5  after meeting with Plaintiff as a regular visitor on September 23, 2012
6  and as a result was allowed to have a legal visit with Plaintiff on
7  October 14, 2012.  (Id.).  By that date, however, Plaintiff had already
8  mailed out his petition to meet the Supreme Court's October 20, 2012
9  filing deadline.  (Id.).

10

11      Plaintiff's Supreme Court petition was timely filed and considered.
12  (Id. at 18).  However, the Court denied Plaintiff's petition on January
13  7, 2013.  (Id.).  Plaintiff maintains that if he had not been denied
14  counsel's input, the petition would have been granted.  (Id.).

15

16      Also during this period, Plaintiff claims that he was "threatened
17  with being beaten if he continued to eat his meals at certain dining
18  tables" or "to watch specific televisions."  (Id. at 31).  In addition,
19  Plaintiff's family was required to pay extortion money to keep him from
20  physical harm.  (Id. at 31).  Even though the threats of physical
21  violence and extortion were apparently made directly by other prisoners,
22  Plaintiff claims that "some of the threats began by information from
23  'Institution staff.'"  Plaintiff believes, based on the timing of the
24  threats, that staff disclosed sensitive information about him in
25  retaliation for his having filed administrative grievances relating to
26  the denial of counsel.  (Id.).

27

28

Plaintiff claims that the prison's interference with counsel's attempts to meet with him violated his Sixth Amendment right to counsel, (id. at 20), his First Amendment right to petition the government, (id. at 27-28), his Fifth Amendment due process and equal protection rights, (id. at 29-30), and his Eighth Amendment right to be free from cruel and unusual punishment. (Id. at 30-31). Plaintiff also claims that Escalante, Duden and Mitchell violated criminal provisions of RICO by impeding the due administration of justice, obstructing the exercise of his rights, using threats of physical force to prevent or delay testimony, and retaliating against him as a witness in an official proceeding. (Id. at 35-37) (citing 18 U.S.C. §§ 1503, 1509, 1512 & 1513). Finally, Plaintiff claims that Escalante violated prison regulations governing attorney visits, codified at 28 C.F.R. §§ 543.13 - 543.14. (Id. at 22-24 & 37). Plaintiff seeks $179,072,575.00 in compensatory damages to be paid jointly and severally by all named and unnamed Defendants. (Id. at 39).

## III.

### DISCUSSION

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss Plaintiff's Complaint due to defects in pleading. Pro se litigants, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. See Lopez, 203 F.3d at 1128-29. Accordingly, the Court grants Plaintiff leave to amend, as indicated below.

\\

\\

**A.    The Complaint Fails To State An Access To The Courts Claim**

The gravamen of the Complaint is that prison employees wrongfully prevented Plaintiff from meeting with counsel and thereby impaired the presentation of his claims to the Supreme Court in a petition for writ of certiorari.  (See, e.g., id. at 27-28).  Prisoners have a constitutional right to meaningful access to the courts.  Silva v. DiVittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011).  The right of access to the courts arises from the Privileges and Immunities Clause of Article IV, the First Amendment right to petition, and the Due Process and Equal Protection rights accorded by the Fifth and Fourteenth Amendments.[2]  Christopher v. Harbury, 536 U.S. 403, 415 & n.12, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) (citing cases); United States v. Wilson, 690 F.2d 1267, 1271-72 (9th Cir. 1982).  The right of access to the courts protects prisoners' right to file civil actions that have "a reasonable basis in law or fact" without "active interference" by the government.  Id. at 1102-03 (internal quotation marks and emphasis omitted).  The right of access to the courts includes the right to in-person (or "contact") visits with counsel.  Ching v. Lewis, 895 F.2d 608, 610 (9th Cir. 1990) (per curiam).

_____

[2] The Complaint appears to attempt to allege separate claims for violations of Plaintiff's right to counsel under the Sixth Amendment, his petition rights under the First Petition, and his due process and equal protection rights under the Fifth Amendment.  (Complaint at 9-10).  However, all of these claims are based on the same operative facts and merely reflect the various sources of the right of access to the courts.  Therefore, the Court will address all of those "separate" claims here under the rubric of "access to the courts."

However, prisoners' right of access to the courts is not absolute. Specifically, the right to "contact visitation with counsel" may be "limited if prison officials can show that such limitations are reasonably related to legitimate penological interests." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (internal quotation marks omitted); see also Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993) (prison policy prohibiting attorney contact visits entirely for certain categories of prisoners did not violate constitution); Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) (prison may deny high-risk inmates contact visits with counsel where other means of communication with counsel exist); Johnson v. County of Wayne, 2008 WL 4279359 at *6 (E.D. Mich. Sept. 16, 2008) (right to reasonable access to the courts does not require prison to provide ideal conditions for attorney interviews); Schick v. Apker, 2009 WL 2016933 at *10 (S.D. N.Y. Mar. 5, 2009) ("The Constitution simply does not guarantee Plaintiff unlimited communications with several attorneys, or the means of communication that Plaintiff might consider the most convenient or productive.").

To state a claim for denial of access to the courts, prisoners must allege an actual injury, i.e., that some official action has frustrated or is impeding plaintiff's attempt to bring a nonfrivolous legal claim. Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011). Specifically, in a "backward-looking" access to the courts action,[3] a plaintiff must describe (1) a nonfrivolous underlying claim

_____

[3] The Supreme Court distinguishes between "forward-looking" access to the courts claims, in which the plaintiff alleges that official action is frustrating plaintiff's ability to prepare and file a suit at the present time, and "backward-looking" claims, in which plaintiff alleges that due to official action, a specific case cannot now be

that was allegedly compromised "to show that the 'arguable' nature of the claim is more than hope"; (2) the official acts that frustrated the litigation of that underlying claim; and (3) a "remedy available under the access claim and presently unique to it" that could not be awarded by bringing a separate action on an existing claim. Christopher, 536 U.S. at 416.

Here, because Plaintiff actually filed his underlying petition with the Supreme Court, the Complaint must show how Defendants' actions impaired the presentation of his claims to a degree that Plaintiff was denied effective and meaningful access to the courts. Plaintiff admits that he was able to meet in person with counsel on September 23, 2012, albeit as a regular visitor. (Complaint at 16-17). Plaintiff further admits that Escalante agreed to allow him a 15-minute call to discuss his petition with counsel and that Plaintiff could communicate with counsel by mail within four to seven days, although Plaintiff does not allege that he took advantage of these opportunities. (Id. at 17). Finally, Plaintiff admits that he met with counsel in a legal visit on October 14, 2012, six days before the Supreme Court filing deadline. (Id.). However, Plaintiff fails to: (1) identify how his petition would have been materially different had he met with counsel in private before October 14, 2012, (2) explain why Defendants' actions were not reasonably related to FCI-Lompoc's penological interests, or (3) show that he had no other effective means of communicating with counsel.

tried, or be tried with all material evidence. In a backward-looking claim, plaintiff must allege facts showing that the official action resulted in the "loss of an opportunity to sue" or the "loss or inadequate settlement of a meritorious case." Christopher, 536 U.S. at 413-14.

1  See, e.g., White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (affirming
2  dismissal with leave to amend where access claim was based on
3  speculation that the materials which plaintiff wished to send to counsel
4  at prison's expense "might have helped counsel" but did not "contain any
5  factual allegations" showing specific detriment to his appeal); Keenan,
6  83 F.3d at 1094 (no violation shown where prisoner did not "allege[]
7  that the denial of contact visits with his lawyer has denied him access
8  to his lawyer or prejudiced his access to the courts").  Accordingly,
9  the Complaint must be dismissed with leave to amend.

10
11  **B.    The Complaint Fails To State A Cruel And Unusual Punishment Claim**
12

13      Plaintiff asserts that Defendants' interference somehow violated
14  his Eighth Amendment right to be free from cruel and unusual punishment.
15  (Complaint at 30-31).  Only the "'unnecessary and wanton infliction of
16  pain'" constitutes cruel and unusual punishment forbidden by the Eighth
17  Amendment.  Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L.
18  Ed. 2d 251 (1986) (citations omitted).  To state an Eighth Amendment
19  claim, a prisoner must allege that prison officials acted with
20  deliberate indifference to a substantial risk of serious harm.  Farmer
21  v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)
22  (citations omitted).  Prison officials manifest deliberate indifference
23  if they know of and disregard an excessive risk to an inmate's safety or
24  health.  Id. at 837.

25
26      Here, Plaintiff alleges only that Defendants "caused Plaintiff to
27  be confined and remain in Federal custody, thereby depriving Plaintiff
28  of his liberty interests . . . in violation of the Cruel and Unusual

1  Punishment provisions within the Eighth Amendment." (Complaint at 30).
2  However, Plaintiff does not allege that he was actually subjected to
3  physical harm or show how Defendants' alleged interference with his
4  meetings with counsel subjected his safety or health to an excessive
5  risk of harm. Accordingly, the Complaint must be dismissed with leave
6  to amend.

7

8  **C.   The Complaint Fails To State A Retaliation Claim**

9

10     Plaintiff alleges that during the period in which he was attempting
11  to meet with counsel, he was also subject to threats of physical
12  violence and extortion, presumably by other prisoners. (Complaint at
13  31). According to Plaintiff, although the threats specifically
14  concerned where he could sit in the dining hall and which televisions he
15  could watch, the "timing of the several threats and extortion is too
16  coincidental to not be applicable to this case." (Id. at 33).
17  Plaintiff therefore concludes that the threats were "initiated by an
18  Institution staff member" who "illegally disclosed sensitive
19  information" about Plaintiff to these prisoners in retaliation for the
20  grievance Plaintiff filed alleging interference with his right to
21  consult with counsel. (Id. at 33-34). In addition, Plaintiff states
22  that Escalante "threatened" him by accusing him of lying about having
23  told counsel when he could visit, which Escalante stated merited an
24  incident report. (Id. at 32).

25

26     A prisoner "retains those First Amendment rights that are not
27  inconsistent with his status as a prisoner or with the legitimate
28  penological objectives of the corrections system." Pell v. Procunier,

1  417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974). Among those
2  rights is the right to file prison grievances and the right to pursue
3  civil rights litigation in the federal courts. Rhodes v. Robinson, 408
4  F.3d 559, 567 (9th Cir. 2005). Because actions taken to retaliate
5  against prisoners who exercise those rights "necessarily undermine those
6  protections, such actions violate the Constitution quite apart from any
7  underlying misconduct they are designed to shield." Id. To state a
8  claim for First Amendment retaliation, a prisoner must allege the
9  following five elements: (1) a state actor took an adverse action
10 against him (2) because of (3) the prisoner's protected conduct, and
11 that the action taken against him (4) chilled the prisoner's exercise of
12 his First Amendment Rights and (5) did not reasonably advance a
13 legitimate correctional goal. See id. at 567–68.

14

15     To prevent dismissal of a claim, a plaintiff must articulate
16 "enough facts to state a claim to relief that is plausible on its face."
17 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167
18 L. Ed. 2d 929 (2007). In addition, the "[f]actual allegations must be
19 enough to raise a right to relief above the speculative level." Id. at
20 555. Plaintiff's speculation that there "must be" a connection between
21 his filing of a grievance and the threats of physical violence directed
22 toward him by other prisoners is insufficient to state a retaliation
23 claim against an unknown "Institution staff member." In addition,
24 Escalante's "threat" that Plaintiff "can/should be written an incident
25 report" for having lied to a staff member was an observation that
26 Escalante made to a correctional counselor who was investigating
27 Plaintiff's grievance, not to Plaintiff himself. (See id. at 52).
28 Furthermore, Escalante tempered even this observation by noting

1  "Regardless [of whether Plaintiff is or is not telling the truth about
2  what he told counsel], inmate Bosworth and Attorney Bruno obviously have
3  some communication issues based on what they both told me on the day in
4  question . . . ."  (Id.).  On these facts, Plaintiff has not plausibly
5  alleged that Escalante retaliated against Plaintiff or that his "threat"
6  chilled the exercise of Plaintiff's constitutional rights.  Accordingly,
7  the Complaint must be dismissed with leave to amend.

8

9  **D.     The Complaint Fails To State A RICO Claim**

10

11      Plaintiff alleges that Defendants violated several criminal laws
12  under RICO.  (Complaint at 35-37).  Specifically, Plaintiff states that
13  Defendants violated 18 U.S.C. § 1503 (intimidation of juror or officer
14  of the court to impede administration of justice); § 1509 (interference
15  with the exercise of rights or performance of duties under any order,
16  judgment, or decree of a court of the United States); § 1512 (use of
17  physical force or threat of physical force to influence, delay or
18  prevent the testimony of any person in an official proceeding); and
19  § 1513 (retaliation for testimony by a witness in an official
20  proceeding).  (Complaint at 35-37).

21

22      Plaintiff's RICO claims are not well-taken.  In the first instance,
23  the facts alleged do not support charges under these statutes because
24  there was no pending court proceeding, Plaintiff was not exercising
25  rights accorded to him under a decree or judgment of a court, and no
26  testimony was given or anticipated in an official proceeding.  More
27  importantly, only a prosecutor can bring criminal charges.  Criminal
28  statutes do not provide for private civil causes of action.  See

1   generally Diamond v. Charles, 476 U.S. 54, 64–65, 106 S. Ct. 1697, 90 L.

2   Ed. 2d 48 (1986) (private citizens cannot compel enforcement of criminal

3   law).

4

5        Furthermore, Plaintiff cannot even state a claim under RICO's civil

6   remedy section, which "requires as a threshold for standing an injury to

7   'business or property.'"   Avalos v. Baca, 596 F.3d 583, 592 (9th Cir.

8   2010); see also   18 U.S.C. § 1964(c).   To state a civil RICO claim, a

9   plaintiff must allege harm to business or property through (1) conduct

10  (2) of an enterprise (3) through a pattern (4) of racketeering activity.

11  Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004).

12  "Without a harm to a specific business or property interest -- a

13  categorical inquiry typically determined by reference to state law --

14  there is no injury to business or property within the meaning of RICO."

15  Diaz v. Gates, 420 F.3d 897, 898 (9th Cir. 2005).   Plaintiff does not

16  and cannot allege that Defendants' alleged acts harmed his business or

17  property.   Accordingly, Plaintiff's RICO claims must be dismissed.   See

18  Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir. 1997) (civil rights

19  violations do not fall within the definition of "racketeering

20  activity"); Silva, 658 F.3d at 1105-06 (affirming dismissal of

21  prisoner's RICO claim without leave to amend where predicate act was not

22  criminal, even though the act alleged stated a claim for violation of

23  prisoner's right to access to the court).   Plaintiff is cautioned

24  against the inclusion of claims in any amended complaint that cannot be

25  supported by credible factual allegations.

26

27

28

14

**E.    The Complaint Fails To State A Claim For Violation Of BOP Regulations**

Plaintiff argues at length that Escalante's actions violated BOP regulations governing attorney visits, codified at 28 C.F.R. §§ 543.13 - 543.14.  (Complaint at 3, 23-24, 37).  Because the caption of the Complaint indicates that Plaintiff is filing this action pursuant to those regulations, the Court presumes that Plaintiff is attempting to state a separate claim for Defendants' alleged regulatory violations. (See id. at 1).

Sections 543.13 and 543.14 "generally empower a warden to establish the terms and conditions of attorney visitation privileges, and to restrict those privileges should an attorney threaten institution security." Sturm v. Clark, 835 F.2d 1009, 1011 n.5 (3d Cir. 1987). While the regulations provide that the warden "generally may not limit the frequency of attorney visits," they specifically authorize the warden to "set the time and place for visits, which ordinarily take place during regular visiting hours." 28 C.F.R. § 543.13(b).

Whether or not Defendants' actions violated sections 543.13 and 543.14, however, Plaintiff may not raise a separate claim for their breach because the regulations do not provide for a private cause of action. See, e.g., Alexander v. Sandoval, 532 U.S. 275, 291, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."); Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang, 376 F.3d 831, 836 (9th

1  Cir. 2004) ("[I]t is the relevant laws passed by Congress, and not rules
2  or regulations passed by an administrative agency, that determine
3  whether an implied cause of action exists."); Schick, 2009 WL 2016933 at
4  *7-8 (28 C.F.R. §§ 543.13 and 540.103 "do not explicitly provide for a
5  private right of action, nor is there any indication that Congress
6  intended to create an implied private right of action); Hoffenberg v.
7  Fed. Bureau of Prisons, 2004 WL 2203479 at *2 (D. Mass. Sept. 14, 2004)
8  (28 C.F.R. §§ 540.103, 543.12, and 545.10 "[o]n their face, . . . do not
9  provide for a private right of action and there is no indication that
10  Congress intended them to create an implied private right of action").
11  Nor would a violation of BOP regulations, in and of itself, constitute
12  a constitutional violation.  See Hovatar v. Robinson, 1 F.3d 1063, 1068
13  n.4 (10th Cir. 1993) (violation of a prison regulation "does not equate
14  to a constitutional violation"); Edwards v. Johnson, 209 F.3d 772, 779
15  (5th Cir. 2000) ("[A] violation of prison regulations in itself is not
16  a constitutional violation").  Accordingly, to the extent that Plaintiff
17  is attempting to state a separate cause of action under 28 C.F.R.
18  §§ 543.13 and 543.14, the Complaint must be dismissed.

19

20  **F.    The Complaint Fails To State A Claim Against The Doe Defendants**

21

22      The Complaint also sues "John and Jane Does 1-20," whom Plaintiff
23  states "may or may not include additional Federal employees . . .
24  assigned to the Federal Correctional Institution" at Lompoc and "may or
25  may not include individuals who acted individually or in concert with
26  other defendants to deny Plaintiff access to his legal counsel . . . ."
27  (Complaint at 6-7).  Generally, actions against "unknown" defendants are
28  disfavored.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

However, a plaintiff may sue unnamed defendants when the identity of the alleged defendants is not known prior to the filing of the complaint. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  In such a situation, a court gives the plaintiff "the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Id.  A plaintiff must diligently pursue discovery to learn the identity of unnamed defendants.

Here, however, the claims against the Doe Defendants must be dismissed because Plaintiff has failed to show how the Doe Defendants participated in the alleged constitutional violations.  There are no specific factual allegations involving Doe Defendants in the Complaint. While Plaintiff states that "two armed Federal officers" ordered counsel to leave the prison parking lot, (Complaint at 16, 24), and that "Institution staff" leaked sensitive information about him that resulted in threats of physical violence against Plaintiff by other prisoners, (id. at 31), the Complaint does not specifically identify any of these employees individually as "Doe No. 1, Doe No. 2," etc. and it is unclear whether these employees are even among the Doe Defendants whom Plaintiff anticipates suing.  Accordingly, the Complaint must be dismissed.

**J.  <u>Plaintiff's Complaint Violates Federal Rule Of Civil Procedure 8</u>**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

1   _Twombly_, 550 U.S. at 555.  Rule 8(e)(1) instructs that "[e]ach averment
2   of a pleading shall be simple, concise, and direct."   A complaint
3   violates Rule 8 if a defendant would have difficulty understanding and
4   responding to the complaint.  _Cafasso, U.S. ex rel. v. General Dynamics_
5   _C4 Systems, Inc._, 637 F.3d 1047, 1059 (9th Cir. 2011).

6

7       Plaintiff's lengthy, repetitive and sometimes rambling Complaint
8   does not comply with Rule 8.  The Complaint contains many unnecessary
9   and irrelevant allegations.  For example, the Complaint includes, among
10  other things:

11

12      •   numerous citations to and discussions of unnecessary case
13          law, (Complaint at 24, 26-27, 32-34), including
14          discussions of legal standards (_id._ at 8 (discussing
15          liberal construction to be given to _pro se_ pleadings));

16

17      •   apparently irrelevant facts unrelated to the core claims
18          at issue, (_see, e.g._, _id._ at 18-19 (discussing petition
19          for rehearing); _id._ at 29 & 40 (discussing need to file
20          habeas petition));

21

22      •   extended restatements of the facts (_compare_ _id._ at 12-19
23          _with_ _id._ at 22-26);

24

25      •   extended restatements of Plaintiff's claims (_compare_ _id._
26          at 9-11 _with_ _id._ at 20-37); and

27

28      •   unnecessary "reservations of rights."  (_Id._ at 11).

18

1   A Complaint is not a legal motion or brief.  Plaintiff is required to
2   give only a short and plain statement of his claims and the <u>essential</u>
3   operative facts supporting them.  He is not required to provide proof of
4   his claims at this stage of the litigation or to discuss legal standards
5   of review.  Accordingly, the Complaint must be dismissed with leave to
6   amend.  Furthermore, the Court warns Plaintiff that if he violates the
7   recommendations in this Order, and again submits a complaint that
8   includes irrelevant and unnecessary material, any such complaint is
9   likely to be dismissed, and may be dismissed without leave to amend.

10
11                                  **IV.**
12                               **CONCLUSION**
13
14        For the reasons stated above, the Complaint is dismissed with leave
15   to amend.  If Plaintiff still wishes to pursue this action, he is
16   granted **thirty (30) days** from the date of this Memorandum and Order
17   within which to file a First Amended Complaint.  In any amended
18   complaint, Plaintiff shall cure the defects described above.  The First
19   Amended Complaint, if any, shall be complete in itself and shall bear
20   both the designation "First Amended Complaint" and the case number
21   assigned to this action.  It shall not refer in any manner to the prior
22   Complaint.
23
24        In any amended complaint, Plaintiff should confine his allegations
25   to those operative facts supporting each of his claims and omit
26   irrelevant details.  Plaintiff is advised that pursuant to Federal Rule
27   of Civil Procedure 8(a), all that is required is a "short and plain
28   statement of the claim showing that the pleader is entitled to relief."

**Plaintiff is strongly encouraged to keep his allegations only to the facts that are relevant and material to his claims.** In any amended complaint, the Plaintiff should make clear the nature and grounds for each claim and specifically identify the defendants, including Doe Defendants by number, who he maintains are liable for that claim. It is not necessary for Plaintiff to cite case law or include legal argument. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis. Furthermore, the First Amended Complaint may not include new Defendants or claims not reasonably related to the allegations in the Complaint. **Plaintiff is strongly advised to avoid repeating any of the deficiencies of his prior complaint.**

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED:  June 11, 2013                              /S/
                                        _____
                                        SUZANNE H. SEGAL
                                        UNITED STATES MAGISTRATE JUDGE

20

THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.