1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  GLENN BOSWORTH,                )  NO. CV 13-2924 DMG (SS)
                                   )
12                 Plaintiff,      )
                                   )
13           v.                    )  **MEMORANDUM AND ORDER DISMISSING**
                                   )
14  DAVID ESCALANTE, et al.,       )  **COMPLAINT WITH LEAVE TO AMEND**
                                   )
15                 Defendants.     )
                                   )
16  _____  )

17

18                         **I.**

19                     **INTRODUCTION**

20

21      On April 25, 2013, Plaintiff, a federal prisoner proceeding pro se,

22  filed a civil complaint against certain named and unnamed employees of

23  the Federal Correctional Institution ("FCI") in Lompoc, California,

24  alleging violations of (1) his civil rights pursuant to Bivens v. Six

25  Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388,

26  91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971); (2) the Racketeer Influenced

27  and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1503, 1509, 1512 &

28  1513; and (3) Federal Bureau of Prisons ("BOP") regulations codified at

1  28 C.F.R. §§ 543.13 - 543.14.   For the reasons stated below, the

2  Complaint is dismissed with leave to amend.[1]

3

4     Congress mandates that district courts initially screen civil

5  complaints filed by a prisoner seeking redress from a governmental

6  entity or employee.  28 U.S.C. § 1915A(a).  This Court may dismiss such

7  a complaint, or any portions thereof, before service of process if the

8  Court concludes that the complaint (1) is frivolous or malicious,

9  (2) fails to state a claim upon which relief can be granted, or

10 (3) seeks monetary relief from a defendant who is immune from such

11 relief.  28 U.S.C. § 1915A(b)(1)-(2); see also Lopez v. Smith, 203 F.3d

12 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

13

14                              **II.**

15                **ALLEGATIONS OF THE COMPLAINT**

16

17     Plaintiff sues three named employees of FCI-Lompoc:  (1) Officer

18 David Escalante, (2) Lieutenant Mitchell, and (3) Lieutenant Duden.

19 (Complaint at 6).  All named Defendants are sued in their individual

20 capacity only.  (Id.).  In addition, Plaintiff sues "John and Jane Does

21 1-20."  (Id. at 6-7).

22

23     Plaintiff generally alleges that Escalante, Mitchell and Duden

24 intentionally and maliciously interfered with his "inalienable right" to

25 meet with counsel before he filed a pro se petition for writ of

26 _____

27     [1] Magistrate Judges may dismiss a complaint with leave to amend

28 without approval of the District Judge.  See McKeever v. Block, 932 F.2d
   795, 798 (9th Cir. 1991).

1  certiorari with the Supreme Court on direct appeal. (<u>Id.</u> at 9).
2  Specifically, Plaintiff states that he hired private counsel to review
3  his draft petition approximately six or seven weeks before the Supreme
4  Court filing deadline of October 20, 2012. (<u>Id.</u> at 25 & 43). The
5  petition raised an "important issue" of "first impression" concerning
6  whether the public trial guarantee applies to sentencing proceedings,
7  which Plaintiff states were closed in his case. (<u>Id.</u> at 21). Plaintiff
8  anticipated that if the petition were granted and the Supreme Court
9  ordered a new sentencing hearing, he would then have the opportunity to
10 challenge the validity of the charges to which he had pled guilty based
11 on newly discovered evidence uncovered during his appeal to the Ninth
12 Circuit. (<u>Id.</u> at 22). Escalante approved the addition of counsel to
13 Plaintiff's list of authorized visitors. (<u>Id.</u> at 13). Counsel made
14 several attempts to contact Escalanate to arrange for a visit to the
15 prison, but Escalante did not return counsel's calls or respond to
16 counsel's faxed request. (<u>Id.</u> at 14).

17

18     On Tuesday, September 18, 2012, Escalante called Plaintiff to his
19 office and told him that counsel could visit only on the prison's
20 regular visiting days, <u>i.e.</u>, Saturdays, Sundays and Mondays. (<u>Id.</u> at
21 15). Plaintiff called counsel from Escalante's office in Escalante's
22 presence using speakerphone. Counsel told Plaintiff that he had
23 coincidentally just arrived at the prison because he had been told the
24 previous day that attorneys were permitted to meet with their clients at
25 the prison any day of the week, not just regular visiting days. (<u>Id.</u>).
26 Escalante told counsel that he could visit only on Saturdays, Sundays
27 and Mondays. Escalante also demanded to know who had informed counsel
28 he could visit during the week and told counsel that he would call him

1  back shortly.  (Id.).  Escalante consulted with Duden, who told him that
2  "if there was not a memorandum from our Legal Department concerning this
3  visit, it was not going to happen."  (Id. at 23).

4

5      Counsel waited in the prison parking lot for Escalante's call.  As
6  he was waiting, "two armed Federal Officers" ordered counsel to leave
7  the premises.  Counsel complied with the order.  (Id. at 16).  Counsel
8  returned to the prison several hours later.  Escalante spoke to counsel
9  in the reception office, where he and counsel agreed that counsel could
10 meet with Plaintiff on Sunday, September 23, 2012 for an authorized
11 legal visit.  (Id.).

12

13     On September 23, 2012, counsel arrived at the prison but was told
14 that Plaintiff had not been approved for a legal visit on that day.
15 (Id. at 16 & 25).  Mitchell permitted counsel to meet with Plaintiff
16 only as a regular visitor.  Because Mitchell did not permit counsel to
17 see Plaintiff for a "legal visit," counsel could not bring his work
18 product with him or use the designated private meeting room normally
19 reserved for attorney visits.  (Id.).  Due to the "lack of work product
20 and privacy, Plaintiff and his counsel could not discuss the substantive
21 aspects" of Plaintiff's draft petition during their visit.  (Id. at 17).

22

23     During this period, Plaintiff asked Escalante if he could arrange
24 for a telephone call to counsel on a secure, unrecorded line.  (Id.).
25 Escalante told Plaintiff that he would allow only a single, fifteen-
26 minute call.  Plaintiff argues that this was insufficient time to
27 discuss his petition in detail and notes that mail communications would

28

4

1  not permit a thorough analysis of the petition either because of the
2  four- to seven-day turnaround in the prison mail system.  (Id.).

3

4     Plaintiff's counsel sent a letter to the prison warden the week
5  after meeting with Plaintiff as a regular visitor on September 23, 2012
6  and as a result was allowed to have a legal visit with Plaintiff on
7  October 14, 2012.  (Id.).  By that date, however, Plaintiff had already
8  mailed out his petition to meet the Supreme Court's October 20, 2012
9  filing deadline.  (Id.).

10

11     Plaintiff's Supreme Court petition was timely filed and considered.
12  (Id. at 18).  However, the Court denied Plaintiff's petition on January
13  7, 2013.  (Id.).  Plaintiff maintains that if he had not been denied
14  counsel's input, the petition would have been granted.  (Id.).

15

16     Also during this period, Plaintiff claims that he was "threatened
17  with being beaten if he continued to eat his meals at certain dining
18  tables" or "to watch specific televisions."  (Id. at 31).  In addition,
19  Plaintiff's family was required to pay extortion money to keep him from
20  physical harm.  (Id. at 31).  Even though the threats of physical
21  violence and extortion were apparently made directly by other prisoners,
22  Plaintiff claims that "some of the threats began by information from
23  'Institution staff.'"  Plaintiff believes, based on the timing of the
24  threats, that staff disclosed sensitive information about him in
25  retaliation for his having filed administrative grievances relating to
26  the denial of counsel.  (Id.).

27

28

1    Plaintiff claims that the prison's interference with counsel's
2  attempts to meet with him violated his Sixth Amendment right to counsel,
3  (<u>id.</u> at 20), his First Amendment right to petition the government, (<u>id.</u>
4  at 27-28), his Fifth Amendment due process and equal protection rights,
5  (<u>id.</u> at 29-30), and his Eighth Amendment right to be free from cruel and
6  unusual punishment. (<u>Id.</u> at 30-31). Plaintiff also claims that
7  Escalante, Duden and Mitchell violated criminal provisions of RICO by
8  impeding the due administration of justice, obstructing the exercise of
9  his rights, using threats of physical force to prevent or delay
10  testimony, and retaliating against him as a witness in an official
11  proceeding. (<u>Id.</u> at 35-37) (citing 18 U.S.C. §§ 1503, 1509, 1512 &
12  1513). Finally, Plaintiff claims that Escalante violated prison
13  regulations governing attorney visits, codified at 28 C.F.R. §§ 543.13 -
14  543.14. (<u>Id.</u> at 22-24 & 37). Plaintiff seeks $179,072,575.00 in
15  compensatory damages to be paid jointly and severally by all named and
16  unnamed Defendants. (<u>Id.</u> at 39).
17
18                                 **III.**
19                             **DISCUSSION**
20
21    Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss
22  Plaintiff's Complaint due to defects in pleading. <u>Pro se</u> litigants,
23  however, must be given leave to amend their complaints unless it is
24  absolutely clear that the deficiencies cannot be cured by amendment.
25  <u>See Lopez</u>, 203 F.3d at 1128-29. Accordingly, the Court grants Plaintiff
26  leave to amend, as indicated below.
27  \\
28  \\

                                     6

1  **A.    The Complaint Fails To State An Access To The Courts Claim**

2

3          The gravamen of the Complaint is that prison employees wrongfully
4  prevented Plaintiff from meeting with counsel and thereby impaired the
5  presentation of his claims to the Supreme Court in a petition for writ
6  of certiorari.   (See, e.g., id. at 27-28).    Prisoners have a
7  constitutional right to meaningful access to the courts.   Silva v.
8  DiVittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011).   The right of access
9  to the courts arises from the Privileges and Immunities Clause of
10 Article IV, the First Amendment right to petition, and the Due Process
11 and Equal Protection rights accorded by the Fifth and Fourteenth
12 Amendments.[2]  Christopher v. Harbury, 536 U.S. 403, 415 & n.12, 122 S.
13 Ct. 2179, 153 L. Ed. 2d 413 (2002) (citing cases); United States v.
14 Wilson, 690 F.2d 1267, 1271–72 (9th Cir. 1982).   The right of access to
15 the courts protects prisoners' right to file civil actions that have "a
16 reasonable basis in law or fact" without "active interference" by the
17 government.   Id. at 1102-03 (internal quotation marks and emphasis
18 omitted).   The right of access to the courts includes the right to
19 in-person (or "contact") visits with counsel.   Ching v. Lewis, 895 F.2d
20 608, 610 (9th Cir. 1990) (per curiam).

21

22

23

24          [2] The Complaint appears to attempt to allege separate claims for
25 violations of Plaintiff's right to counsel under the Sixth Amendment,
   his petition rights under the First Petition, and his due process and
26 equal protection rights under the Fifth Amendment. (Complaint at 9-10).
   However, all of these claims are based on the same operative facts and
27 merely reflect the various sources of the right of access to the courts.
   Therefore, the Court will address all of those "separate" claims here
28 under the rubric of "access to the courts."

1   However, prisoners' right of access to the courts is not absolute.
2   Specifically, the right to "contact visitation with counsel" may be
3   "limited if prison officials can show that such limitations are
4   reasonably related to legitimate penological interests." Barnett v.
5   Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (internal quotation marks
6   omitted); see also Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993)
7   (prison policy prohibiting attorney contact visits entirely for certain
8   categories of prisoners did not violate constitution); Keenan v. Hall,
9   83 F.3d 1083, 1094 (9th Cir. 1996) (prison may deny high-risk inmates
10  contact visits with counsel where other means of communication with
11  counsel exist); Johnson v. County of Wayne, 2008 WL 4279359 at *6 (E.D.
12  Mich. Sept. 16, 2008) (right to reasonable access to the courts does not
13  require prison to provide ideal conditions for attorney interviews);
14  Schick v. Apker, 2009 WL 2016933 at *10 (S.D. N.Y. Mar. 5, 2009) ("The
15  Constitution simply does not guarantee Plaintiff unlimited
16  communications with several attorneys, or the means of communication
17  that Plaintiff might consider the most convenient or productive.").

18

19  To state a claim for denial of access to the courts, prisoners must
20  allege an actual injury, i.e., that some official action has frustrated
21  or is impeding plaintiff's attempt to bring a nonfrivolous legal claim.
22  Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1018 (9th Cir.
23  2011). Specifically, in a "backward-looking" access to the courts
24  action,[3] a plaintiff must describe (1) a nonfrivolous underlying claim

25

26  [3] The Supreme Court distinguishes between "forward-looking" access
27  to the courts claims, in which the plaintiff alleges that official
    action is frustrating plaintiff's ability to prepare and file a suit at
28  the present time, and "backward-looking" claims, in which plaintiff
    alleges that due to official action, a specific case cannot now be

1  that was allegedly compromised "to show that the 'arguable' nature of
2  the claim is more than hope"; (2) the official acts that frustrated the
3  litigation of that underlying claim; and (3) a "remedy available under
4  the access claim and presently unique to it" that could not be awarded
5  by bringing a separate action on an existing claim.  <u>Christopher</u>, 536
6  U.S. at 416.

7

8       Here, because Plaintiff actually filed his underlying petition with
9  the Supreme Court, the Complaint must show how Defendants' actions
10 impaired the presentation of his claims to a degree that Plaintiff was
11 denied effective and meaningful access to the courts.  Plaintiff admits
12 that he was able to meet in person with counsel on September 23, 2012,
13 albeit as a regular visitor.  (Complaint at 16-17).  Plaintiff further
14 admits that Escalante agreed to allow him a 15-minute call to discuss
15 his petition with counsel and that Plaintiff could communicate with
16 counsel by mail within four to seven days, although Plaintiff does not
17 allege that he took advantage of these opportunities.  (<u>Id.</u> at 17).
18 Finally, Plaintiff admits that he met with counsel in a legal visit on
19 October 14, 2012, six days before the Supreme Court filing deadline.
20 (<u>Id.</u>).  However, Plaintiff fails to:  (1) identify how his petition
21 would have been materially different had he met with counsel in private
22 before October 14, 2012, (2) explain why Defendants' actions were not
23 reasonably related to FCI-Lompoc's penological interests, or (3) show
24 that he had no other effective means of communicating with counsel.

25 ─────────────

26 tried, or be tried with all material evidence.  In a backward-looking
27 claim, plaintiff must allege facts showing that the official action
   resulted in the "loss of an opportunity to sue" or the "loss or
28 inadequate settlement of a meritorious case."  <u>Christopher</u>, 536 U.S. at
   413-14.

1  See, e.g., White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (affirming

2  dismissal with leave to amend where access claim was based on

3  speculation that the materials which plaintiff wished to send to counsel

4  at prison's expense "might have helped counsel" but did not "contain any

5  factual allegations" showing specific detriment to his appeal); Keenan,

6  83 F.3d at 1094 (no violation shown where prisoner did not "allege[]

7  that the denial of contact visits with his lawyer has denied him access

8  to his lawyer or prejudiced his access to the courts"). Accordingly,

9  the Complaint must be dismissed with leave to amend.

10

11  **B.   The Complaint Fails To State A Cruel And Unusual Punishment Claim**

12

13       Plaintiff asserts that Defendants' interference somehow violated

14  his Eighth Amendment right to be free from cruel and unusual punishment.

15  (Complaint at 30-31). Only the "'unnecessary and wanton infliction of

16  pain'" constitutes cruel and unusual punishment forbidden by the Eighth

17  Amendment. Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L.

18  Ed. 2d 251 (1986) (citations omitted). To state an Eighth Amendment

19  claim, a prisoner must allege that prison officials acted with

20  deliberate indifference to a substantial risk of serious harm. Farmer

21  v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)

22  (citations omitted). Prison officials manifest deliberate indifference

23  if they know of and disregard an excessive risk to an inmate's safety or

24  health. Id. at 837.

25

26       Here, Plaintiff alleges only that Defendants "caused Plaintiff to

27  be confined and remain in Federal custody, thereby depriving Plaintiff

28  of his liberty interests . . . in violation of the Cruel and Unusual

1  Punishment provisions within the Eighth Amendment." (Complaint at 30).

2  However, Plaintiff does not allege that he was actually subjected to

3  physical harm or show how Defendants' alleged interference with his

4  meetings with counsel subjected his safety or health to an excessive

5  risk of harm. Accordingly, the Complaint must be dismissed with leave

6  to amend.

7

8  **C.    The Complaint Fails To State A Retaliation Claim**

9

10      Plaintiff alleges that during the period in which he was attempting

11  to meet with counsel, he was also subject to threats of physical

12  violence and extortion, presumably by other prisoners. (Complaint at

13  31). According to Plaintiff, although the threats specifically

14  concerned where he could sit in the dining hall and which televisions he

15  could watch, the "timing of the several threats and extortion is too

16  coincidental to not be applicable to this case." (Id. at 33).

17  Plaintiff therefore concludes that the threats were "initiated by an

18  Institution staff member" who "illegally disclosed sensitive

19  information" about Plaintiff to these prisoners in retaliation for the

20  grievance Plaintiff filed alleging interference with his right to

21  consult with counsel. (Id. at 33-34). In addition, Plaintiff states

22  that Escalante "threatened" him by accusing him of lying about having

23  told counsel when he could visit, which Escalante stated merited an

24  incident report. (Id. at 32).

25

26      A prisoner "retains those First Amendment rights that are not

27  inconsistent with his status as a prisoner or with the legitimate

28  penological objectives of the corrections system." Pell v. Procunier,

1  417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974).  Among those
2  rights is the right to file prison grievances and the right to pursue
3  civil rights litigation in the federal courts.  Rhodes v. Robinson, 408
4  F.3d 559, 567 (9th Cir. 2005).  Because actions taken to retaliate
5  against prisoners who exercise those rights "necessarily undermine those
6  protections, such actions violate the Constitution quite apart from any
7  underlying misconduct they are designed to shield."  Id.  To state a
8  claim for First Amendment retaliation, a prisoner must allege the
9  following five elements: (1) a state actor took an adverse action
10 against him (2) because of (3) the prisoner's protected conduct, and
11 that the action taken against him (4) chilled the prisoner's exercise of
12 his First Amendment Rights and (5) did not reasonably advance a
13 legitimate correctional goal.  See id. at 567–68.

14

15      To prevent dismissal of a claim, a plaintiff must articulate
16 "enough facts to state a claim to relief that is plausible on its face."
17 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167
18 L. Ed. 2d 929 (2007).  In addition, the "[f]actual allegations must be
19 enough to raise a right to relief above the speculative level."  Id. at
20 555.  Plaintiff's speculation that there "must be" a connection between
21 his filing of a grievance and the threats of physical violence directed
22 toward him by other prisoners is insufficient to state a retaliation
23 claim against an unknown "Institution staff member."  In addition,
24 Escalante's "threat" that Plaintiff "can/should be written an incident
25 report" for having lied to a staff member was an observation that
26 Escalante made to a correctional counselor who was investigating
27 Plaintiff's grievance, not to Plaintiff himself.  (See id. at 52).
28 Furthermore, Escalante tempered even this observation by noting

12

1    "Regardless [of whether Plaintiff is or is not telling the truth about
2    what he told counsel], inmate Bosworth and Attorney Bruno obviously have
3    some communication issues based on what they both told me on the day in
4    question . . . ."  (Id.).  On these facts, Plaintiff has not plausibly
5    alleged that Escalante retaliated against Plaintiff or that his "threat"
6    chilled the exercise of Plaintiff's constitutional rights.  Accordingly,
7    the Complaint must be dismissed with leave to amend.

8

9    **D.    The Complaint Fails To State A RICO Claim**

10

11       Plaintiff alleges that Defendants violated several criminal laws
12   under RICO.  (Complaint at 35-37).  Specifically, Plaintiff states that
13   Defendants violated 18 U.S.C. § 1503 (intimidation of juror or officer
14   of the court to impede administration of justice); § 1509 (interference
15   with the exercise of rights or performance of duties under any order,
16   judgment, or decree of a court of the United States); § 1512 (use of
17   physical force or threat of physical force to influence, delay or
18   prevent the testimony of any person in an official proceeding); and
19   § 1513 (retaliation for testimony by a witness in an official
20   proceeding).  (Complaint at 35-37).

21

22       Plaintiff's RICO claims are not well-taken.  In the first instance,
23   the facts alleged do not support charges under these statutes because
24   there was no pending court proceeding, Plaintiff was not exercising
25   rights accorded to him under a decree or judgment of a court, and no
26   testimony was given or anticipated in an official proceeding.  More
27   importantly, only a prosecutor can bring criminal charges.  Criminal
28   statutes do not provide for private civil causes of action.  See

1  generally Diamond v. Charles, 476 U.S. 54, 64–65, 106 S. Ct. 1697, 90 L.
2  Ed. 2d 48 (1986) (private citizens cannot compel enforcement of criminal
3  law).

4

5     Furthermore, Plaintiff cannot even state a claim under RICO's civil
6  remedy section, which "requires as a threshold for standing an injury to
7  'business or property.'"  Avalos v. Baca, 596 F.3d 583, 592 (9th Cir.
8  2010); see also  18 U.S.C. § 1964(c).  To state a civil RICO claim, a
9  plaintiff must allege harm to business or property through (1) conduct
10  (2) of an enterprise (3) through a pattern (4) of racketeering activity.
11  Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004).
12  "Without a harm to a specific business or property interest -- a
13  categorical inquiry typically determined by reference to state law --
14  there is no injury to business or property within the meaning of RICO."
15  Diaz v. Gates, 420 F.3d 897, 898 (9th Cir. 2005).  Plaintiff does not
16  and cannot allege that Defendants' alleged acts harmed his business or
17  property.  Accordingly, Plaintiff's RICO claims must be dismissed.  See
18  Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir. 1997) (civil rights
19  violations  do  not  fall  within  the  definition  of  "racketeering
20  activity");  Silva,  658  F.3d  at  1105-06  (affirming  dismissal  of
21  prisoner's RICO claim without leave to amend where predicate act was not
22  criminal, even though the act alleged stated a claim for violation of
23  prisoner's right to access to the court).  Plaintiff is cautioned
24  against the inclusion of claims in any amended complaint that cannot be
25  supported by credible factual allegations.

26

27

28

1 **E.    The  Complaint  Fails  To  State  A  Claim  For  Violation  Of  BOP**
2 **Regulations**

3

4       Plaintiff  argues  at  length  that  Escalante's  actions  violated  BOP
5 regulations  governing  attorney  visits,  codified  at  28  C.F.R.  §§  543.13  -
6 543.14.    (Complaint  at  3,  23-24,  37).    Because  the  caption  of  the
7 Complaint  indicates  that  Plaintiff  is  filing  this  action  pursuant  to
8 those  regulations,  the  Court  presumes  that  Plaintiff  is  attempting  to
9 state  a  separate  claim  for  Defendants'  alleged  regulatory  violations.
10 (See  id.  at  1).

11

12       Sections  543.13  and  543.14  "generally  empower  a  warden  to  establish
13 the  terms  and  conditions  of  attorney  visitation  privileges,  and  to
14 restrict  those  privileges  should  an  attorney  threaten  institution
15 security."    Sturm  v.  Clark,  835  F.2d  1009,  1011  n.5  (3d  Cir.  1987).
16 While  the  regulations  provide  that  the  warden  "generally  may  not  limit
17 the  frequency  of  attorney  visits,"  they  specifically  authorize  the
18 warden  to  "set  the  time  and  place  for  visits,  which  ordinarily  take
19 place  during  regular  visiting  hours."    28  C.F.R.  §  543.13(b).

20

21       Whether  or  not  Defendants'  actions  violated  sections  543.13  and
22 543.14,  however,  Plaintiff  may  not  raise  a  separate  claim  for  their
23 breach  because  the  regulations  do  not  provide  for  a  private  cause  of
24 action.    See,  e.g.,  Alexander  v.  Sandoval,  532  U.S.  275,  291,  121  S.
25 Ct.  1511,  149  L.  Ed.  2d  517  (2001)  ("Language  in  a  regulation  may  invoke
26 a  private  right  of  action  that  Congress  through  statutory  text  created,
27 but  it  may  not  create  a  right  that  Congress  has  not."); Opera  Plaza
28 Residential  Parcel  Homeowners  Ass'n  v.  Hoang,  376  F.3d  831,  836  (9th

1  Cir. 2004) ("[I]t is the relevant laws passed by Congress, and not rules
2  or regulations passed by an administrative agency, that determine
3  whether an implied cause of action exists."); Schick, 2009 WL 2016933 at
4  *7-8 (28 C.F.R. §§ 543.13 and 540.103 "do not explicitly provide for a
5  private right of action, nor is there any indication that Congress
6  intended to create an implied private right of action); Hoffenberg v.
7  Fed. Bureau of Prisons, 2004 WL 2203479 at *2 (D. Mass. Sept. 14, 2004)
8  (28 C.F.R. §§ 540.103, 543.12, and 545.10 "[o]n their face, . . . do not
9  provide for a private right of action and there is no indication that
10 Congress intended them to create an implied private right of action").
11 Nor would a violation of BOP regulations, in and of itself, constitute
12 a constitutional violation.  See Hovatar v. Robinson, 1 F.3d 1063, 1068
13 n.4 (10th Cir. 1993) (violation of a prison regulation "does not equate
14 to a constitutional violation"); Edwards v. Johnson, 209 F.3d 772, 779
15 (5th Cir. 2000) ("[A] violation of prison regulations in itself is not
16 a constitutional violation").  Accordingly, to the extent that Plaintiff
17 is attempting to state a separate cause of action under 28 C.F.R.
18 §§ 543.13 and 543.14, the Complaint must be dismissed.
19
20 **F.    The Complaint Fails To State A Claim Against The Doe Defendants**
21
22    The Complaint also sues "John and Jane Does 1-20," whom Plaintiff
23 states "may or may not include additional Federal employees . . .
24 assigned to the Federal Correctional Institution" at Lompoc and "may or
25 may not include individuals who acted individually or in concert with
26 other defendants to deny Plaintiff access to his legal counsel . . . ."
27 (Complaint at 6-7).  Generally, actions against "unknown" defendants are
28 disfavored.  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

16

1  However, a plaintiff may sue unnamed defendants when the identity of the
2  alleged defendants is not known prior to the filing of the complaint.
3  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  In such a
4  situation, a court gives the plaintiff "the opportunity through
5  discovery to identify the unknown defendants, unless it is clear that
6  discovery would not uncover the identities, or that the complaint would
7  be dismissed on other grounds."  Id.  A plaintiff must diligently pursue
8  discovery to learn the identity of unnamed defendants.

9

10      Here, however, the claims against the Doe Defendants must be
11  dismissed because Plaintiff has failed to show how the Doe Defendants
12  participated in the alleged constitutional violations.  There are no
13  specific factual allegations involving Doe Defendants in the Complaint.
14  While Plaintiff states that "two armed Federal officers" ordered counsel
15  to leave the prison parking lot, (Complaint at 16, 24), and that
16  "Institution staff" leaked sensitive information about him that resulted
17  in threats of physical violence against Plaintiff by other prisoners,
18  (id. at 31), the Complaint does not specifically identify any of these
19  employees individually as "Doe No. 1, Doe No. 2," etc. and it is unclear
20  whether these employees are even among the Doe Defendants whom Plaintiff
21  anticipates suing.  Accordingly, the Complaint must be dismissed.

22

23  **J.   Plaintiff's Complaint Violates Federal Rule Of Civil Procedure 8**

24

25      Federal Rule of Civil Procedure 8(a)(2) requires that a complaint
26  contain only "'a short and plain statement of the claim showing that the
27  pleader is entitled to relief,' in order to 'give the defendant fair
28  notice of what the . . . claim is and the grounds upon which it rests.'"

1  <u>Twombly</u>, 550 U.S. at 555.  Rule 8(e)(1) instructs that "[e]ach averment
2  of a pleading shall be simple, concise, and direct."   A complaint
3  violates Rule 8 if a defendant would have difficulty understanding and
4  responding to the complaint.  <u>Cafasso, U.S. ex rel. v. General Dynamics</u>
5  <u>C4 Systems, Inc.</u>, 637 F.3d 1047, 1059 (9th Cir. 2011).

6

7      Plaintiff's lengthy, repetitive and sometimes rambling Complaint
8  does not comply with Rule 8.  The Complaint contains many unnecessary
9  and irrelevant allegations.  For example, the Complaint includes, among
10 other things:

11

12      •    numerous citations to and discussions of unnecessary case
13           law, (Complaint at 24, 26-27, 32-34), including
14           discussions of legal standards (<u>id.</u> at 8 (discussing
15           liberal construction to be given to <u>pro se</u> pleadings));

16

17      •    apparently irrelevant facts unrelated to the core claims
18           at issue, (<u>see, e.g.</u>, <u>id.</u> at 18-19 (discussing petition
19           for rehearing); <u>id.</u> at 29 & 40 (discussing need to file
20           habeas petition));

21

22      •    extended restatements of the facts (<u>compare id.</u> at 12-19
23           <u>with</u> <u>id.</u> at 22-26);

24

25      •    extended restatements of Plaintiff's claims (<u>compare id.</u>
26           at 9-11 <u>with</u> <u>id.</u> at 20-37); and

27

28      •    unnecessary "reservations of rights."  (<u>Id.</u> at 11).

18

1  A Complaint is not a legal motion or brief.  Plaintiff is required to
2  give only a short and plain statement of his claims and the <u>essential</u>
3  operative facts supporting them.  He is not required to provide proof of
4  his claims at this stage of the litigation or to discuss legal standards
5  of review.  Accordingly, the Complaint must be dismissed with leave to
6  amend.  Furthermore, the Court warns Plaintiff that if he violates the
7  recommendations in this Order, and again submits a complaint that
8  includes irrelevant and unnecessary material, any such complaint is
9  likely to be dismissed, and may be dismissed without leave to amend.
10
11                                **IV.**
12                            **CONCLUSION**
13
14      For the reasons stated above, the Complaint is dismissed with leave
15  to amend.  If Plaintiff still wishes to pursue this action, he is
16  granted **thirty (30) days** from the date of this Memorandum and Order
17  within which to file a First Amended Complaint.  In any amended
18  complaint, Plaintiff shall cure the defects described above.  The First
19  Amended Complaint, if any, shall be complete in itself and shall bear
20  both the designation "First Amended Complaint" and the case number
21  assigned to this action.  It shall not refer in any manner to the prior
22  Complaint.
23
24      In any amended complaint, Plaintiff should confine his allegations
25  to those operative facts supporting each of his claims and omit
26  irrelevant details.  Plaintiff is advised that pursuant to Federal Rule
27  of Civil Procedure 8(a), all that is required is a "short and plain
28  statement of the claim showing that the pleader is entitled to relief."

                                    19

1 **Plaintiff is strongly encouraged to keep his allegations only to the**
2 **facts that are relevant and material to his claims.** In any amended
3 complaint, the Plaintiff should make clear the nature and grounds for
4 each claim and specifically identify the defendants, including Doe
5 Defendants by number, who he maintains are liable for that claim.  It is
6 not necessary for Plaintiff to cite case law or include legal argument.
7 Plaintiff is also advised to omit any claims for which he lacks a
8 sufficient factual basis.  Furthermore, the First Amended Complaint may
9 not include new Defendants or claims not reasonably related to the
10 allegations in the Complaint.  **Plaintiff is strongly advised to avoid**
11 **repeating any of the deficiencies of his prior complaint.**

12

13      **Plaintiff is explicitly cautioned that failure to timely file a**
14 **First Amended Complaint, or failure to correct the deficiencies**
15 **described above, will result in a recommendation that this action be**
16 **dismissed with prejudice for failure to prosecute and obey Court orders**
17 **pursuant to Federal Rule of Civil Procedure 41(b).  <u>Plaintiff is further</u>**
18 **<u>advised that if he no longer wishes to pursue this action, he may</u>**
19 **<u>voluntarily dismiss it by filing a Notice of Dismissal in accordance</u>**
20 **<u>with Federal Rule of Civil Procedure 41(a)(1).  A form Notice of</u>**
21 **<u>Dismissal is attached for Plaintiff's convenience</u>**.

22

23 DATED:  June 11, 2013                    /S/
24                                _____
                                   SUZANNE H. SEGAL
25                                UNITED STATES MAGISTRATE JUDGE

26

27

28

                                   20

1   **THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE**

2   **INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**